Anthony TRIPODI, Plaintiff,

v.

LOCAL UNION NO. 38, SHEET METAL WORKERS' INTERNATIONAL ASSN, AFL–CIO and Jeffrey S. Dubin, Defendant.

No. 97 Civ. 4658 CM.

United States District Court, S.D. New York.

Oct. 25, 2000.

Kevin A. Coles, John J. Radshaw, Coles, Baldwin & Craft, LLC, Fairfield, CT, for plaintiff.

Jeffrey S. Dubin, Huntington, NY, for defendant.

## MEMORANDUM DECISION AND ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION

McMAHON, District Judge.

Plaintiff Anthony Tripodi commenced this action for malicious prosecution, intentional infliction of emotional distress (extreme and outrageous conduct), and violation of the Connecticut Unfair Trade Practices Act in 1996, in the District of Connecticut.[1] The complaint alleges that plaintiff ceased to be a member of the defendant Local Union No. 38 ("the Union") after he was laid off from a job in 1993. Shortly thereafter, Tripodi started his own ostensibly non-union shop. However, he continued to pay Union dues and to keep his benefits in force, and he eventually signed a Union contract (albeit, he alleges, under duress). Tripodi was charged with seven violations of the Union's Constitution in mid–1994. After conducting a union hearing and fining plaintiff $21,000, the Union, acting through its counsel, Dubin, instituted an action against Tripodi in this Court to enforce the award. Dubin also commenced a second action on behalf of the Union, in which he sought counsel fees relative to the enforcement action. The action to enforce the award was dismissed on the merits in 1996, based on the District Court's finding that Tripodi had ceased to be a member of the Union in 1993. Dubin thereafter dismissed his action for attorneys' fees without prejudice and without costs.

---

1. The complaint purports to contain six separate causes of action, but some of the claims do not set forth a cause of action (for example, the first three claims for relief variously restate plaintiff's claim for malicious prosecution).

Tripodi immediately sued the Union and Dubin in the District of Connecticut, where he lived and worked. In 1997, the action was transferred to this District by The Hon. Robert Chatigny. On March 31, 2000, defendant Dubin filed a suggestion of lack of subject matter jurisdiction, on the ground that, while plaintiff was a citizen and resident of Connecticut and he was a citizen and resident of New York, the Union, an unincorporated association, was a citizen of both States, since it has members in both states. Plaintiff has conceded the point. (Plaintiff's Memorandum of Law in Support of Motion to dismiss Non–Diverse Party Without Prejudice, at 1.)

Tripodi has moved to dismiss the non-diverse party, the Union, without prejudice, and to proceed against Dubin alone in this Court. Dubin has in turn cross-moved to dismiss the action for lack of subject matter jurisdiction, or in the alternative, to dismiss the claim for malicious prosecution against him, arguing that New York law precludes such a claim.

When faced with a lack of complete diversity, a district court has the discretion to drop a non-diverse party if that party is not a necessary party. Fed.R.Civ.P. 21 and 19(b); *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832–38, 109 S.Ct. 2218, 2222–26, 104 L.Ed.2d 893 (1989). Under Rule 21, misjoinder is not in and of itself grounds to dismiss the entire action. However, a district court, acting pursuant to Rule 19(b), is charged with determining whether in equity and good conscience the action should proceed, or whether the absent person should be regarded as indispensable, thus necessitating dismissal. The four factors that a court should consider in deciding whether a party is indispensable are: to what extent will a judgment rendered in the party's absence be prejudicial to the party or to those who remain; to what extent will protective measures in the judgment ameliorate or avoid any such prejudice; to what extent will a judgment rendered in the party's absence be adequate; and to what extent will the plaintiff have an adequate remedy if the action is dismissed due to the absence of the party. Fed R. Civ. P. 19(b).

■■■ Here, there is a dispute between the parties as to whether New York or Connecticut law applies to the merits of this dispute, and that difference looms large over these proceedings. Under New York law, it appears that the Union is an indispensable party. There is no allegation in the complaint that Dubin personally abused the litigation process by causing Tripodi what the law terms "special injury"—that is, by obtaining the unwarranted imposition of a provisional remedy (such as arrest, attachment or injunction) or their substantial equivalent. (See Complaint, attached as Exh. A to the Affidavit of Gino A. Colombo, sworn to March 30, 2000). Thus, under New York law, Dubin has no direct liability to Tripodi. *See Engel v. CBS, Inc.,* 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626 (1999). His liability to the plaintiff, if any, must therefore be strictly derivative of that of his client, the Union. Under Connecticut law, however, Dubin and the Union may be held jointly and severally liable as tortfeasors, because Connecticut recognizes a separate and independent tort against an opposing party's lawyer who abuses the litigation process. *See DeLaurentis v. City of New Haven,* 220 Conn. 225, 264, 597 A.2d 807, 826 (1991) (citing *Mozzochi v. Beck,* 204 Conn. 490, 494–95, 529 A.2d 171 (1987)). Since a plaintiff may choose to sue exactly as many jointly and severally liable parties as he wishes, the Union would not be an indispensable party if the case on the merits were governed by Connecticut law. *See Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 358 (2d Cir.2000).

As the Court has undoubted jurisdiction to decide its own jurisdiction, *see United States v. International Bus. Mach.,* 539 F.Supp. 473, 475 (S.D.N.Y.1982) (quoting C. Wright, The Law of Federal Courts 57–58 (3d ed. 1976)) (" 'Jurisdiction to determine jurisdiction' refers to the power of

the court to determine whether it has jurisdiction over the parties to and the subject matter of the suit. If the jurisdiction of a federal court is questioned, the court has the power, subject to review, to determine the jurisdictional issue."), I turn to the issue of which State's law governs the claims in suit.

■ Judge Chatigny transferred the case to this Court pursuant to 28 U.S.C. § 1406(a). Therefore, as both parties concede,[2] the law of the transferee forum (New York) applies, including its choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York's choice of law, courts ordinarily apply an "interests" analysis for the purposes of determining which state's law applies in a multi-state tort case. Tripodi lives and works in Connecticut, not in New York, and he claims in his motion papers that the effects of the allegedly malicious lawsuit brought by Dubin on behalf of the Union were intended to be felt in Connecticut, by forcing Tripodi to maintain a union shop at his place of business in that state. So he argues that Connecticut has the greatest interest in having its law applied.

But the paramount interest in cases involving the torts of malicious prosecution and abuse of process is that of the state whose courts were allegedly abused. Therefore, the general rule in such actions is that the governing law is that of the state where the proceeding complained of took place. Restatement (Second) of Conflicts of Laws § 155. The proceeding complained of by Tripodi took place in the Southern District of New York. Therefore, it would seem that New York law governs the substantive allegations of the complaint—or, at the very least, an interest as great as that of Connecticut. In either event, New York would look to its own law to govern plaintiff's claims.

New York case law supports the proposition that New York's interest in this

action is greater than that of Connecticut. In *Heaney v. Purdy,* 29 N.Y.2d 157, 324 N.Y.S.2d 47, 272 N.E.2d 550 (1971), the Court of Appeals ruled that the law of the forum state should apply in cases involving the intentional torts of false arrest, false imprisonment and malicious prosecution. Citing *Babcock v. Jackson,* 12 N.Y.2d 473, 483, 240 N.Y.S.2d 743, 750, 191 N.E.2d 279 (1963), New York's highest court announced that, where "plaintiff is claiming that defendant used its legal machinery maliciously ....it would be almost unthinkable to seek the applicable rule in the law of some other place." *Heaney,* 29 N.Y.2d at 159, 324 N.Y.S.2d 47, 272 N.E.2d 550.

Plaintiff nonetheless argues that New York has from time to time recognized that another state has a greater interest than it does in having its law apply in a malicious prosecution action. However, the Second Circuit case cited by plaintiff for that proposition, *Weiss v. Hunna,* 312 F.2d 711 (2d Cir.1963), turned on an entirely different issue. In *Weiss,* an Austrian attorney applied for an injunction in Austria to enjoin a transfer of shares that was to take place in New York. The plaintiff sued in New York, charging the Austrian with abuse of process. The Second Circuit agreed that New York law applied, but only because Austrian law did not provide the plaintiff with a sufficient remedy to redress the frustration of his contract. Here, Tripodi has an adequate remedy for abuse of process by the Union and Dubin in the New York State Supreme Court, and perhaps in the Connecticut Superior Court as well if they are amenable to service in Connecticut.

■ Assuming, *arguendo,* that Connecticut's interest in this matter (which derives solely from Tripodi's personal interests) were as great as those of New York, New York's conflicts of law would look to the law of the place where the tort was committed. *See Bing v. Halstead,* 495 F.Supp.

**2.** See Plaintiff's Reply Memorandum of Law at p. 2.

517, 520 (S.D.N.Y.1980) ("When the interest analysis does not point clearly to the law of any jurisdiction, the law of the place where the tort occurred prevails."). The plaintiff concedes that the *locus delecti* is New York, not Connecticut. Under the Restatement (Second) of Conflict of Laws § 155, the *lex locus delecti* rule is trumped only when another State has a *greater* interest than does the original forum state in having its law applied. Plaintiff has not pointed to any particular reason why Connecticut (as opposed to plaintiff) would care one way or the other about this case. No great public policy issues are involved, and plaintiff can concededly recover against the Union, if not against Dubin personally, for whatever wrong was done to him by the commencement and prosecution of the original lawsuit. Thus, New York law governs.

Because the Union is an indispensable party to this action under New York law, the case should be dismissed under Rule 19, as the presence of the Union destroys complete diversity.

Judicial economy also favors this course. Plaintiff has as much as stated that he intends to find a forum where he can pursue the Union separately if he continues his action against Dubin in this Court. (See Memorandum in Support of Plaintiff's Motion at p. 3.) There is a strong public policy against litigating the same claim against two different defendants in two different fora, both because of the risk of inconsistent verdicts and because of the waste of judicial resources. Plaintiff has a perfectly adequate forum in the state courts, and he can obtain redress against both the Union and Dubin in a single action.

In view of the challenge to jurisdiction, the Court had already withdrawn its opinion dated March 27, 2000. All other pending motions are denied as moot by virtue of this opinion.

The clerk is directed to enter judgment dismissing the complaint. This constitutes the decision and order of the Court.